Tearson, J.
From the proofs we are satisfied, that much the larger part of the amount, for which the plaintiff became bound, were debts of John Hunt contracted for his own purposes, and not for the support and education of his children, or for expenses incurred on account of the slaves.
‘ We are also satisfied, that the plaintiff assumed the liability, trusting for indemnity to the notes, which were put into his hands, and to the guaranty of Thomas Hunt, and that this is an attempt, upon the failure of said Hunt, to fall back upon the trust fund, which was not before looked to.
But apart from these considerations, the case made by the bill is fatally defective. “By a decree of this Court, it was directed, that John Bullock (then acting as trustee,) might, if he should think proper, put the trust fund into the possession of John Hunt for the support of his family, and might permit him to expend the whole profits for that *109 purpose, and for the education of his children.” The fund, consisting of a plantation, and some twenty or thirty negroes, with a stock of horses, cattle, household furniture, &c., was put into the possession of John Hunt. He had the entire control and management of it, and was at liberty to apply the whole of the profits to the support and education of his children, all of whom were then quite young. This state of things continued for some five years, when, in 1838, Thomas Hunt was appointed trustee, in place of John Bullock, with a view to the removal of the said John Hunt and his family, and of the negroes, forming the most valuable parto! the trust fund, to the State of Mississippi. The plaintiff alleges, that, at that time,' John Hunt had incurred debts for and on account of his children, and the necessary charges in respect of the ne-groes, to the amount of §4000, over and above the whole profits of the trust fund ; and that he, out of friendship for the wife and children of said Hunt, {the cestuis que trust,) became bound for the payment of the several debts, making the above amount, in order to enable Hunt to take the negroes to the State of Mississippi.
The fund is now in the hands of another trustee, James W. Bullock, one of the defendants; and the plaintiff seeks to charge it with the sum he has been obliged to pay. It is clear, he must make out his equity by and through John Hunt, for whom, and at whose instance, he became bound.
John Hunt alleges, that he exceeded the profits of the innd some $4000, but he exhibits no account, and, for aught that appears, he kept none, so as to show what was the amount of profits received, and how it was expended, and by what means he was obliged so far to overrun hii limit. This is the fatal defect in the bill. Upon its face it shows, that Hunt, in whose shoes the plaintiff stands, has been guilty of gross negligence or of downright extrava* *110 gance. It would be extravagance thus to exceed the income of one’s own property — much more so in regard to a .trust fund : and still more so, when there is an express restriction to the profits of the fund ; and yet, without any account or attempt at explanation, the plaintiff seeks to follow and charge the trust fund. There is no principle of Equity, upon which the bill can be sustained.
It may be true, that, under some circumstances, a trustee, although restricted to the expenditure of the profits, may be at liberty to anticipate by spending, under an emergency, more than the profits of the current year ; as if there be a dearth and a consequent failure of crops, or some extraordinary sickness, making it necessary to incur heavy medical bills : but, in such case, the existence of ibis emergency must be averred and proven and a full o ccount rendered.
The bill must be dismissed at the plaintiff’s cost.
Per rL'EiAM. Decree accordingly.